# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>**Antonio Helio Azevedo**<br><br>Debtor. | **Bankruptcy Case<br>No. 11-41561-JDP** |
| **Gary L. Rainsdon,<br>Chapter 7 Trustee**,<br><br>Plaintiff,<br><br>vs.<br><br>**Davisco Foods International,<br>Inc.,**<br><br>Defendant. | **Adv. Proceeding<br>No. 12-8095-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

Daniel C. Green and Brett R. Cahoon, Racine, Olson, Nye, Budge & Bailey, Pocatello, Idaho, Attorneys for Plaintiff.

MEMORANDUM OF DECISION – 1

Joseph M. Meier and Matt B. Schelstrate, Cosho Humphrey, LLP, Boise, Idaho, Attorneys for Defendant

### *Introduction*

Plaintiff chapter 7[1] trustee Gary L. Rainsdon ("Trustee") commenced this adversary proceeding against Defendant Davisco Foods International, Inc. ("Davisco) to avoid a transfer made by Debtor Antonio Helio Azevedo ("Azevedo") to Davisco while he was operating his dairy business under chapter 12. Trustee and Davisco have filed cross-motions for summary judgment. Dkt. Nos. 11 and 16. On July 15, 2013, the Court conducted a hearing at which counsel for the parties appeared and presented arguments in support of their respective motions. At the conclusion of the hearing, the Court took the issues under advisement. This Memorandum of Decision represents the Court's findings of fact and conclusions of law and disposes of the issues raised by the motions.[2]

---

[1]   Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037. Civil Rule references are to the Federal Rules of Civil Procedure 1- 86.

[2]   *See* Rules 9014; 7052.

MEMORANDUM OF DECISION – 2

*Facts*

The parties do not dispute the following material facts.

Davisco produces cheese at its plant in Jerome, Idaho.  To do so, it purchases and receives more than ninety truckloads of raw milk daily from area dairy farmers.  Affidavit of Jim Ward, CFO of Davisco, Dkt. No. 16-1 at ¶ 5.  Azevedo, a dairy farmer, sold his milk to Davisco from August 1997 until December 2012.  *Id.* at ¶ 7.

In the industry, it is typical for the commercial purchaser to pay the dairy farmer for the milk in the month following delivery when the milk prices in the heavily-regulated market can be determined.  *Id.* at ¶ 8.  However, in some instances, the milk purchaser, at its discretion and upon request of the dairy farmer, may give the dairy farmer a cash "advance," or in other words, a payment in advance of the due date for milk delivered within the same month.  *Id.* at ¶ 10.  Instead of netting out the amount advanced against monies due to the diary farmer the following month, the milk purchaser will deduct the advance from future payments to the farmer over time.  *Id.* at ¶ 13.  In this fashion, the dairy farmer will have

MEMORANDUM OF DECISION – 3

access to cash to operate, but will not have to continually request an advance from the purchaser. Affidavit of Steve Ewing, Dkt. No. 16-3 at ¶ 5. In addition, the use of advances helps ensure the purchaser's access to a steady supply of milk from stable producers. This sort of transaction forms the basis of the dispute in this case.

As noted above, Azevedo was a long-time Davisco milk supplier. Azevedo sold milk to Davisco in December 2010. Needing funds to operate, that same month, Azevedo asked Davisco for an advance for the milk he had delivered. Affidavit of Jim Ward, CFO of Davisco, Dkt. No. 16-1 at ¶ 14. At the time of the delivery, Davisco owed Azevedo $132,847.88 for milk, which amount, under normal circumstances, would be paid to Azevedo in January 2011. *Id.* Of that amount, Azevedo asked Davisco for an advance of $100,000. *Id.*

Davisco complied with Azevedo's request. The parties agreed that, instead of netting out the $100,000 advance from the payments to be made by Davisco to Azevedo in January, Davisco would deduct a fixed sum from each future payment it owed to Azevedo for future deliveries until

MEMORANDUM OF DECISION – 4

the advance, plus 8% interest, was repaid.  *Id.*; *see also* Patron Advance

Disbursement, Dkt. No. 1, Exh. A.  Consistent with this agreement,

Davisco made deductions of approximately $8,700 each month from

payments made to Azevedo from January 1, 2011 through December 22,

2011.  *Id.*  Over this span, Davisco deducted the agreed amount to cover

the prepayment, and interest, it made to Azevedo in December 2010; the

deductions from Azevedo's milk checks totaled $104,133.84.  Affidavit of

Jim Ward, CFO of Davisco, Dkt. No. 16-1 at ¶ 16.

Although not an express term in the advance contract, it was

understood by the parties that Azevedo would continue to supply milk to

Davisco.  *Id.* at ¶ 17.  As a result, during the time that Davisco made

deductions to satisfy the advance balance, and while Azevedo continued

to deliver milk, Davisco was never owed more than the amount it owed to

Azevedo.  *Id.* at ¶ 19.  It was also understood that if Azevedo were to stop

delivering milk, Davisco would deduct the full balance due on the

advance from Azevedo's final milk payment.  *Id.*

After Azevedo received the advance from Davisco, on September 20,

MEMORANDUM OF DECISION – 5

2011, Azevedo filed a chapter 12 bankruptcy petition.  As agreed, during

the pendency of the chapter 12 case, Azevedo continued to deliver milk to

Davisco, and Davisco continued to make deductions from Azevedo's milk

checks until December 2011 when the advance was paid in full, plus

interest.  The total amount deducted by Davisco during the pendency of

the bankruptcy was $25,810.56.

When he could not confirm a debt repayment plan, Azevedo's

bankruptcy case was converted to a chapter 7 case on May 11, 2012.

Trustee commenced this action against Davisco on December 21, 2012,

seeking to recover the amount Davisco deducted from Azevedo's milk

payments during the pendency of the chapter 12 case as unauthorized,

postpetition transfers under §§ 549(a) and 550.  Dkt. No. 1.  In its answer

to Trustee's complaint Davisco asserted the equitable defense of

recoupment.  Dkt. No. 6.  The parties then each moved for summary

judgment.

MEMORANDUM OF DECISION – 6

### *Analysis and Disposition*

In support of his motion for summary judgment Trustee argues that the "advance" transaction between Davisco and Azevedo, at bottom, constituted a loan from Davisco to Azevedo that was repaid with interest during the pendency of Azevedo's bankruptcy case.  Trustee argues Davisco's deductions were unauthorized postpetition transfers of property of the bankruptcy estate, and pursuant to §§ 549(a) and 550, he is entitled to avoid the payments and recover them for the benefit of the creditors of the bankruptcy estate to share.

Davisco urges its summary judgment motion should be granted because the deductions it made from Azevedo's milk checks to recover the advance are protected under the equitable doctrine of recoupment.  It points out that all the elements of recoupment are met under these facts, and that it is equitable to apply the defense in this case.

In reply, Trustee first argues that recoupment may not be asserted as a valid defense to a § 549(a) action by a bankruptcy trustee as a matter of

MEMORANDUM OF DECISION – 7

law.  Next, he argues that, if recoupment is an available defense in this

context, it is inapplicable here because Davisco can not satisfy the "same

transaction" test required by the defense.  Finally, at the hearing on the

motions, Trustee argued that it would be inequitable to allow Davisco to

retain the funds it deducted from the milk checks because its agreement

with Azevedo was not disclosed to, nor authorized by, the Court.  Simply

put, Trustee argues that allowing Davisco to recover its prebankruptcy

loan in this fashion is inequitable to other unsecured creditors and violates

the policy of pro rata distributions as to such creditors incorporated in the

Bankruptcy Code.

## I.   Summary Judgment Standard

Rule 7056 incorporates Civil Rule 56, which sets forth the familiar

summary judgment standard for evaluating the parties' motions here:

"The court shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Civil Rule 56(a).  A party seeking summary

MEMORANDUM OF DECISION – 8

judgment bears the initial burden to demonstrate the absence of a genuine

issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once

this initial burden is met by the moving party, the adverse party must

come forward with evidence to demonstrate the existence of a genuine

issue of material fact for trial.  *Id.* at 323-24; *Devereaux v. Abbey*, 263 F.3d

1070, 1076 (9th Cir. 2001).  However, the movant may still be entitled to

summary judgment if there is a dispute of fact so long as there is no

"genuine" dispute of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A "genuine" dispute of fact is one that could affect the outcome of

the case, or demonstrate that the moving party is not entitled to judgment

as a matter of law.  *Id.*

When parties submit competing motions for summary judgment

targeting the same claims or issues, "each motion must be reviewed on its

own merits."  *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249

F.3d 1132, 1136 (9th Cir. 2001).  That is, a trial court is required to review

the evidence properly submitted in support of each motion to determine

MEMORANDUM OF DECISION – 9

whether each motion satisfies the summary judgment standard. *Id.* Even

when faced with cross-motions for summary judgment, the court still has

the responsibility to determine whether there are genuine issues of

material fact for trial. *Id.*

Applying these principles to this action, the Court agrees with the

parties that the issues presented for resolution are solely questions of law.

Because there are no genuine issues of material fact that must be resolved

in order to address the legal issues, the outcome may be determined on

summary judgment. The pivotal decision for the Court under these facts is

whether, as a matter of law, Davisco may invoke the equitable doctrine of

recoupment as a defense to Trustee's § 549 avoidance claims, and if so,

whether the defense is properly applied to the transactions between

Davisco and Azevedo.

**II.    Applicable Law.**

A.  Section 549.

Section  549(a) provides that "a trustee may 'avoid a transfer of

MEMORANDUM OF DECISION – 10

property of the estate—(1) that occurs after the commencement of the case;

and . . . (2) . . . (B) that is not authorized under this title or by the court.'"

*Aalfs v. Wirum (In re Straightline Inv., Inc.)*, 525 F.3d 870, 877 (9th Cir. 2008)

(quoting §§ 549(a)(1), (2)(B)).  Rule 6001 instructs that "[a]ny entity

asserting the validity of a transfer under § 549 . . . shall have the burden of

proof."  *See Hopkins v. Suntrust Mort., Inc. (In re Ellis)*, 10.3 IBCR 80, 82

(Bankr. D. Idaho 2010); *Hopkins v. Lojek (In re Scheu)*, 06.4 IBCR 101, 102

(Bankr. D. Idaho 2006).  Therefore, in a § 549 avoidance action, the trustee

bears the burden of proving that a postpetition transfer of estate property

occurred, but the burden of proof as to the validity of the postpetition

transfer is on the transferee.  *See* 10 COLLIER ON BANKRUPTCY ¶ 6001.01[2]

(Alan N. Resnick & Henry J. Sommer eds. 16th ed.) (noting that the

transferee has the burden of proof per Rule 6001 only "on the issue of the

validity of the transfer and not on any other [element of § 549].").

    B.  Equitable Doctrine of Recoupment.

    "It is well settled . . . that a bankruptcy defendant can meet a

MEMORANDUM OF DECISION – 11

plaintiff-debtor's claim with a counterclaim arising out of the same

transaction, at least to the extent that the defendant merely seeks

recoupment." *Reiter v. Cooper*, 507 U.S. 258, 265 n.2 (1993) (citing *In re B &*

*L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986); *Lee v. Schweiker*, 739 F.2d 870,

875 (3d Cir. 1984)).  Recoupment is an equitable doctrine that involves the

"netting out of debt arising from a single transaction." *In re Straightline*

*Inv., Inc.*, 525 F.3d at 882 (quoting *Oregon v. Harmon (In re Harmon)*, 188 B.R.

421, 424 (9th Cir. BAP 1995)).  It is a "judicially developed doctrine" that is

"in the nature of a defense arising out of some feature of the transaction

upon which the plaintiff's action is grounded." *In re Club Wholesale*

*Concepts, Inc.*, 94 IBCR 213, 216 (Bankr. D. Idaho 1994) (quoting *United*

*States v. Dalm*, 494 U.S. 596, 605 (1990)).  Stated another way, recoupment

"'is the setting up of a demand arising from the *same transaction* as the

plaintiff's claim or cause of action, strictly for the purpose of abatement or

reduction of such claim.'" *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d

1392, 1399 (9th Cir. 1996) (quoting COLLIER ON BANKRUPTCY ¶ 553.02)

MEMORANDUM OF DECISION – 12

(emphasis in original).[3]

In order to determine whether the "same transaction" requirement of recoupment is satisfied, the Ninth Circuit instructs the bankruptcy court to apply the "logical relationship test." *See Sims v. United States Dept. of Health and Human Servs. (In re TLC Hospitals, Inc.)*, 224 F.3d 1008, 1012 (9th Cir. 2000); *Newbery Corp.*, 95 F.3d at 1403. This "logical relationship test" is the same as that used to identify a compulsory counterclaim under Civil Rule 13(a); it asks whether the defendant's claim arises out of "the same aggregate set of operative facts as the [plaintiff's] claim." *Aetna U.S. Healthcare v. Madigan (In re Madigan)*, 270 B.R. 749, 755 (9th Cir. BAP 2001) (quoting *Pinkstaff v. United States (In re Pinkstaff)*, 974 F.2d 113, 115 (9th Cir. 1992)). "Under the 'logical relationship' test, the word 'transaction' is given liberal and flexible construction." *Id.* at 755 (citing *Newbery*, 95 F.3d at 1402). A series of transactions may satisfy this flexible standard, *Id.*, but

---

[3] The same transaction requirement of recoupment is primarily what distinguishes it from the doctrine of setoff. *See* § 553; *see also* 5 COLLIER ON BANKRUPTCY ¶ 553.10.

MEMORANDUM OF DECISION – 13

it should not be applied "so loosely that multiple occurrences in any

continuous commercial relationship would constitute one transaction," *In

re TLC Hospitals, Inc.*, 224 F.3d at 1012.  In reviewing commercial contracts,

it is appropriate to apply the doctrine of recoupment "when there are

ongoing transactions and obligations arising under the same contract." *In

re Madigan*, 270 B.R. at 758 (citing *In re B & L Oil Co.*, 782 F.2d at 155 (10th

Cir. 1986)).[4]

A "bankruptcy trustee takes property subject to the rights of

recoupment." *In re Madigan*, 270 B.R. at 754 (citing *Megafoods Stores, Inc. v.

Flagstaff Realty Assocs. (In re Flagstaff Realty Assocs.)*, 60 F.3d 1031, 1035 (3d

Cir. 1995); *Reiter*, 507 U.S. at 265 n.2); *see also Matter of U.S. Abatement Corp.*,

79 F.3d 393, 398 (3d Cir. 1996) (stating "the trustee of a bankruptcy estate

takes property subject to the rights of recoupment.  In other words, to the

extent that a party is entitled to recoupment of funds, the debtor *has no*

_____

[4] "[C]ourts often find that the 'same transaction' requirement is satisfied
when corresponding liabilities arise under a single contract." *In re Madigan*, 270
B.R. at 785 (citing 5 COLLIER ON BANKRUPTCY ¶ 553.10[1]).

MEMORANDUM OF DECISION – 14

*interest* in the funds.") (internal citations and quotations omitted) (emphasis in original).

"The justification for the defensive use of recoupment in bankruptcy is that there is no independent basis for a 'debt,' and therefore there is no 'claim' against estate property." *In re Madigan*, 270 B.R. at 754.

Finally, because the defense is based in equity, "courts should apply the recoupment doctrine in bankruptcy cases only when it would be inequitable for the debtor to enjoy the benefits of [a] transaction without meeting its obligations." *Newbery Corp.*, 95 F.3d at 1403 (internal citations and quotations omitted). A good example of the equitable nature of the recoupment defense is exemplified in *In re Straightline Inv., Inc.*

In that case, relying upon § 549(a), a chapter 7 trustee sought to avoid a postpetition transfer made by the debtor to the defendant while the debtor was operating in a chapter 11 case. The defendant had paid $186,455 to the debtor to purchase the debtors' accounts receivable, which had a face value of approximately $200,000. However, before the debtor's

MEMORANDUM OF DECISION – 15

case was converted to a chapter 7 case, the bankruptcy court entered an

order denying the debtor's request to approve the transfer the accounts

receivable to the defendant.  Notwithstanding this order, the debtor

transferred the accounts receivable to the defendant.

After conversion of the case, the chapter 7 trustee commenced a

§ 549(a) against the defendant to avoid the transfer of the accounts.  The

defendant argued recoupment as a defense to the trustee's avoidance

action.  The bankruptcy court denied recoupment was available to the

defendant because it engaged in inequitable conduct.  On appeal, the

Ninth Circuit agreed and rejected the defendant's argument, stating

"recoupment does not apply here . . . because it is an equitable remedy and

equitable remedies may not be invoked to compensate someone who has

engaged in inequitable conduct."  *In re Straightline Inv., Inc.*, 525 F.3d at

882.  Because the defendant proceeded with the "disguised loan which the

bankruptcy court had precluded" the Ninth Circuit would not allow the

defendant to argue recoupment.  *Id.*

MEMORANDUM OF DECISION – 16

### III.    Application of Law to Facts

Davisco concedes that by making the deductions from monies that would otherwise be payable to Azevedo for milk purchases it received postpetition transfers of property of the bankruptcy estate.  Davisco also acknowledges that these transfers were not been authorized by this Court for purposes of § 549(a) and Rule 6001.  *See* Memorandum in Support of Defendant's Motion for Summary Judgment, Dkt. No. 18 at 3.  Therefore, the only issue before the Court, is whether these  postpetition transfers of property of the estate, though not approved by the Court, were otherwise appropriate.  Davisco bears the burden of proof on this issue per Rule 6001.

A.  Whether Recoupment is a Defense to § 549(a) Action.

Trustee argues that because § 549 contains express exceptions protecting certain types of postpetition transfers,[5] the Court should not

---

[5]  Pursuant to the express exceptions of § 549, a trustee may not avoid certain transfers after the commencement of an involuntary case but before the order for relief, see § 549(b), and the trustee may not avoid transfers of interest in real property to good faith purchasers for present fair value, see § 549(c).

MEMORANDUM OF DECISION – 17

venture outside the language of the Code to apply the equitable doctrine

of recoupment in this context.  The Court disagrees.

Trustee cites no cases for his position that recoupment is unavailable

as a defense as a matter of law other than those that point out that

recoupment is not codified in the Bankruptcy Code.  This observation is, of

course, correct.  However, the Supreme Court has approved the defensive

use of recoupment in bankruptcy cases in *Reiter v. Cooper,* even though the

doctrine is not expressly incorporated in the Code.  507 U.S. at 265 n.2.

Recoupment has also been discussed in trustee avoidance actions in other

decisions.  *See, e.g., Bouma Dairy v. Braun (In re Coast Grain Co.),* EC-05-

1213-PaNMa, 2006 WL 6810917 (9th Cir. BAP Jan. 31, 2006) (unpublished)

(applying the doctrine of recoupment in an action under § 553(b) but

determining the "same transaction" test was not met); *Warsco v. Household*

*Bank F.S.B.,* 272 B.R. 246 (Bankr. N.D. Ind. 2002) (discussing and allowing

the defense of recoupment in a chapter 7 trustee's §§ 547, 549, and 553

action); *In re Homecall of Southwest Virginia, Inc.,* 7-87-00545, 1990 WL

MEMORANDUM OF DECISION – 18

278658 (Bankr. W.D. Va. July 18, 1990) (discussing and applying

recoupment in a § 549(a) action by the trustee); *In re Yonkers Hamilton*

*Sanitarium, Inc.*, 22 B.R. 427 (Bankr. S.D.N.Y. 1982) (allowing defense of

recoupment in a chapter 7 trustee's § 547 action).  Further, as noted above,

the Ninth Circuit in *In re Straightline Inv., Inc.*, considered application of the

defense of recoupment in a trustee's action under § 549(a), eventually

declining to apply it to protect a defendant who had ignored a prior court

order.

 Absent persuasive authority, the Court declines Trustee's invitation

to hold that, as a matter of law, the defense of recoupment may not be

invoked by a transferee in a trustee's § 549(a) action.[6]

---

 [6] The Court's conclusion that recoupment is available as a defense to a
trustee's avoidance action is apparently shared by the authors of the Collier
treatise, as noted by the Ninth Circuit with approval:

> [I]n *any suit or action between the estate and another*, the
> defendant should be entitled to show that because of matters
> arising out of the transaction sued on, he or she is not liable in
> full for the plaintiff's claim.  There is no element of preference
> here or of an independent claim to be set off, but merely an

MEMORANDUM OF DECISION – 19

B.  Whether Recoupment Applies to these Transfers.

Of course, even if recoupment is available, Davisco must show that
it dealings with Azevedo satisfies the requirements of that defense.  That
is, Davisco must show the parties' agreement: (1) involved a netting out of
debts, (2) based on a "single transaction" between the parties, and (3) that
it is equitable to apply the defense in this case.

Davisco argues that the Patron Advance Disbursement agreement
evidences the netting out of the debt created by the advance, and that it
renders the deductions made by Davisco a single transaction between the
parties for purposes of recoupment.  Further, Davisco argues it is equitable
to allow it to recoup its advance because it allowed Azevedo to have a
larger, steady stream of milk sale income during the repayment period.

Trustee disagrees and argues Davisco has not satisfied either

---

arrival at a just and proper liability on the main issue, and this
would seem permissible without reference to . . . section 553(a).

*Newbery Corp.*, 95 F.3d at 1399-400 (9th Cir. 1996) (quoting COLLIER ON
BANKRUPTCY ¶ 553.03, at 553-17) (emphasis added).

MEMORANDUM OF DECISION – 20

elements (2) or (3) above.  First, he argues the multiple deliveries of milk by Azevedo paired with the multiple deductions by Davisco violate the "single transaction" requirement of the defense.  He cites the Court to *In re Madigan* and *Cal. Canners and Growers v. Military Distrib. of Va., Inc. (In re Cal. Canners and Growers)*, 62 B.R. 18 (9th Cir. BAP 1986) to support this conclusion.  In addition, Trustee argues that it would be inequitable to allow Davisco to retain the postbankruptcy payments because, to do so, Davisco would recover more on its claim from Debtor than the pro rata share of any distributions to be made to Azevedo's other creditors.

> 1.  *"Same Transaction" as Determined by the "Logical Relationship Test".*

Measuring the undisputed facts against the "logical relationship test," the Court concludes that Davisco's deductions were indeed part of a "single transaction" for purposes of applying the doctrine of recoupment. As explained above, in December 2010, Davisco and Azevedo entered into the Patron Advance Disbursement, under which, contrary to the usual

MEMORANDUM OF DECISION – 21

terms for Davisco's purchases of milk, Davisco paid Azevedo $100,000
immediately for milk delivered in that same month.  Instead of deducting
the amount advanced from Azevedo's January 2011 milk checks, though,
Davisco agreed to spread out the payments to recover the advance over
the course of the following year, thereby allowing Azevedo an immediate
influx of cash, and a larger stream of money each month thereafter to
cover its operating expenses.  *See* Affidavit of Steve Ewing, Dkt. No. 16-3 at
¶ 5.

The Court concludes that these terms involved the "netting out of
debt arising from a single transaction" or, stated another way, "the setting
up of a demand arising from the same transaction as the plaintiff's claim
or cause of action, strictly for the purpose of abatement or reduction of
such claim."  The "single transaction" of the parties was the agreement in
December 2010.  It is the basis of the claims by Trustee, standing in the
shoes of Azevedo, as well as the recoupment claim by Davisco.  The Court
concludes the parties' agreement creates the "logical relationship" between

MEMORANDUM OF DECISION – 22

the claims, and the claims arise from the same aggregate set of operative

facts.  Further, as pointed out in *In re Madigan* and *In re B & L Oil Co.*, it is

appropriate to apply the doctrine of recoupment here because the facts

demonstrate a series of "ongoing transactions and obligations" created

under a single agreement, the Patron Advance Disbursement contract.  As

contemplated by the parties' agreements, Azevedo was to continue to

supply milk to Davisco, and Davisco agreed, through monthly deductions,

to net out the amount it advanced incrementally.  The course of

performance under the contract by the parties to the agreement supports

this conclusion because, as agreed, Azevedo continued to supply milk

while Davisco deducted the agreed upon amount until the advance was

paid off in December 2011.

      The Court disagrees with Trustee that *In re Cal. Canners and Growers*

and *In re Madigan* compel a different result.  In *In re Cal. Canners and*

*Growers*, the Ninth Circuit BAP affirmed the bankruptcy court's refusal to

apply recoupment because the transactions between the debtor and

MEMORANDUM OF DECISION – 23

defendant did not arise from a single transaction even though the "overall

relationship between the parties" was established by a distributorship

agreement.  62 B.R. at 20.  In that case, the parties had pre- and

postpetition debts for "several single transactions" that the defendant

attempted to recoup.  The BAP found that the distributorship agreement

executed by the parties was only in place to govern the overarching

relationship between the parties, which "contemplate[d] that the parties

*might* enter into transactions for the sale and purchase of goods."  *Id.*

(emphasis added).  The eventual dealings between the parties were found

to be "separate and distinct transactions," however.  *Id.*

 The facts here are distinguishable from those in *In re Cal. Canners and*

*Growers* because the Patron Advance Disbursement contract was *the*

transaction between the parties.  In contrast to *In re Cal. Canners and*

*Growers*, this contract did not contemplate the possibility of future

transactions between the parties.  Rather, it was the transaction between

the parties.  The fact that Azevedo made several deliveries of milk to

MEMORANDUM OF DECISION – 24

Davisco, rather than a single delivery, as a method of repaying the

advance, does not alter this conclusion. As stated above, this commercial

contract created "ongoing transactions and obligations" under a single

agreement, therefore it is appropriate to apply recoupment here.

The facts in *In re Madigan* are also significantly different from those

here. In that case, an insurance company overpaid an insured on a

disability claim. The insurance policy allowed the insurer to recover from

the insured's benefit payments if the insured also received social security

benefits for the same disability. The insurance company attempted to

recover the overpayments, but the insured filed a bankruptcy petition.

After bankruptcy, the insured once again filed a claim for disability

benefits under the same policy. While the insured's claim was approved,

the insurance company deducted the overpayments it had attempted to

recover prepetition. The insured reopened his closed bankruptcy case and

alleged that, in recouping the overpayments, the insurer was violating the

§ 524(a) discharge. In response the insurance company argued

MEMORANDUM OF DECISION – 25

recoupment.

The bankruptcy court found recoupment was available because there was not a "logical relationship" between the two disability claims, and found that the insurance company violated the discharge injunction. On appeal, the Ninth Circuit BAP agreed and held that recoupment did not apply under these facts because these the insured's claims constituted separate transactions under the "logical relationship test." 270 B.R. at 754. The BAP found that these claims were "two distinct disability claims" and thus recoupment was not applicable. *Id.* at 759. In support of this conclusion, the Panel stated, "[h]ere there were *two* [r]eimbursement [a]greements, *two* disability periods, and *two* claims separated by a two-year period of employment and bankruptcy." *Id.* at 761 (emphasis in original).

In this case, there is but a single agreement that contemplated several future milk deliveries, and several deductions from milk payments.

MEMORANDUM OF DECISION – 26

### 2.  Is Recoupment Equitable in this Case?

Trustee argues that allowing Davisco's recoupment defense in this case would be inequitable because it violates the Bankruptcy Code's pro rata distribution paradigm.  However, this argument was rejected by the Ninth Circuit in *Newbery Corp.*, 95 F.3d at 1400.  There, in discussing recoupment, the Ninth Circuit noted that its prior decision in *Quittner v. Los Angeles Steel Casting, Co.*, 202 F.2d 814 (9th Cir. 1953), which held that application of recoupment in the bankruptcy context "would interfere with the ratable distribution of assets among the general creditors," had been effectively overruled by the Supreme Court's decision in *Reiter v. Cooper*, 507 U.S. 258 (1993).  Contrary to Trustee's argument here, in *Reiter*, the Court observed that "[r]ecoupment permits a determination of the just and proper liability on the main issue, and involves no element of preference."  507 U.S. at 265 n.2.

In this case, Trustee seeks to unwind an agreement which bestowed considerable benefit on Azevedo by providing his business with needed

MEMORANDUM OF DECISION – 27

capital on reasonable, ordinary commercial terms.  *See Newbery Corp.*, 95

F.3d at 1403.  Allowing Davisco to net out its debt incrementally through

post-bankruptcy deductions from Azevedo's milk checks fostered

Azevedo's efforts to reorganize.  To penalize Davisco for its willingness to

extend Azevedo credit solely because Azevedo was unable to confirm a

reorganization plan may make such credit difficult to obtain by other diary

farmers in need, which may impair their ability to weather difficult

financial times and cause them to fail.  While the Bankruptcy Code

endorses ratable distributions to all prebankruptcy creditors, allowing

Davisco to retain the monies it deducted from Azevedo's milk checks in

this case does no great violence to that precept.

### *Conclusion*

In a separate order, Trustee's motion for summary judgment will be

denied, Davisco's motion for summary judgment will be granted, and

Trustee's complaint against Davisco will be dismissed with prejudice.

MEMORANDUM OF DECISION – 28

Dated:  August 19, 2013

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 29